DANIEL JOSEPH AUGUSTA,

               Plaintiff,

v.                                              1:16-CV-0310
                                                 (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS        PETER MARGOLIUS, ESQ.
  Counsel for Plaintiff
7 Howard St.
Catskill, NY 12414

U.S. SOCIAL SECURITY ADMIN.           SANDRA M. GROSSFELD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 22.)

      Currently before the Court, in this Social Security action filed by Daniel Joseph Augusta ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 11, 20.) For the reasons set forth below, it is ordered that Plaintiff's motion is denied and Defendant's motion is granted.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born in 1989. (T. 53.) He completed high school. (T. 153.) Generally, Plaintiff's alleged disability consists of scoliosis and a learning disability. (T. 152.) His alleged disability onset date is November 20, 2012. (T. 32.) He previously worked as a cashier/stock person. (T. 36.)

   B.   **Procedural History**

On November 20, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 64.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 15, 2014, Plaintiff appeared before the ALJ, Michelle S. Marcus. (T. 28-52.) At the hearing, Plaintiff amended his alleged onset date of disability to November 20, 2012 and as a result he was no longer entitled to a period of disability under Title II of the Act. 20 C.F.R. §§ 404.130, 404.131, 404.315 (2012). On September 15, 2014, ALJ Marcus issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-27.) On January 12, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.   **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-24.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2011 and was not eligible for a period of disability and disability insurance benefits as of the amended alleged onset date of November 20, 2012, due to lack of insurance status and Plaintiff had not engaged in substantial gainful activity since November 20, 2012. (T. 17-18.) Second, the ALJ found that Plaintiff had the severe impairments of Kyphoscoliosis and a learning disability. (T. 18.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T.18-19.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform unskilled sedentary work[1]; however, Plaintiff could frequently use his upper extremities for fingering, feeling, and handling and occasionally bend, stoop, crouch, crawl, kneel, balance, climb stairs and ramps, reach overhead, and operate foot controls. (T. 19-20.) Further, the ALJ determined that Plaintiff could have occasional exposure to vibrations and extremes of heat and cold, never unprotected heights, ladders or scaffolds. (T. 20.) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 22-23.)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.  Plaintiff's Arguments

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a) (2012).

Plaintiff essentially makes two arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence. (Dkt. No. 11 at 3-4 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ's step five determination was not supported by substantial evidence because the ALJ should have called on a vocational expert ("VE") to testify. (*Id.* at 4.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues that the ALJ's RFC determination was supported by substantial evidence and the ALJ properly weighted the medical opinion evidence in the record. (Dkt. No. 20 at 8-10 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues that VE testimony was not needed in order to make a determination at step five. (*Id.* at 10-11.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

    **B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §

416.920 (2012). The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's RFC Determination

Plaintiff's RFC is "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012).

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ afforded the opinion of consultative examiner, Joseph Prezio, M.D., great weight, however, the ALJ failed to incorporate the doctor's opinion that Plaintiff could occasionally handle, finger and feel. (Dkt. No. 11 at 4 [Pl.'s Mem. of Law].) Plaintiff does not raise issue with any other aspect of the ALJ's RFC determination.

On June 4, 2014, Dr. Prezio examined Plaintiff, provided a medical source statement, and completed a physical RFC form. (T. 301-311.) Dr. Prezio noted on examination that Plaintiff's hand and finger dexterity was intact and his grip strength was 5/5 bilaterally. (T. 302.) He further observed that Plaintiff had full range of motion

in his shoulders, elbows, forearms, wrists, and fingers. (*Id.*) He noted Plaintiff had no joint inflammation, effusion, or instability in his upper extremities and no sensory abnormalities. (*Id.*) Dr. Prezio's medical source statement did not provide for any limitations in Plaintiff's use of his hands. (T. 303.) In his detailed physical RFC form, Dr. Prezio indicated that Plaintiff could "occasionally" reach overhead, reach in all other directions, handle, finger, feel, and push/pull. (T. 308.)[2] Dr. Prezio indicated that these limitations were due to Plaintiff's severe Kyphoscoliosis. (*Id.*) Dr. Prezio noted that Plaintiff could "sort, handle, or use paper/files." (T. 311.)

In February of 2013, Albert Paolano, M.D., performed a consultative physical examination. (T. 210-212.) Plaintiff informed Dr. Paolano that his back pain limited his ability to stand, walk, sit, push, pull, lift, and bend. (T. 210.) On examination, Dr. Paolano observed Plaintiff had normal range of motion in his shoulders, elbows, wrists, knees, ankles, and hips. (T. 211.) Dr. Paolano observed that Plaintiff had full strength in his extremities bilaterally. (*Id.*) Dr. Paolano did not provide a medical source statement.

The record also contains a medical source statement from Michael Fuller, M.D. (T. 289-294.) Dr. Fuller treated Plaintiff in October of 2011 for dysphagia. (T. 299.) Dr. Fuller did not treat Plaintiff again until March of 2014 at which time Plaintiff complained of back pain. (T. 296.) Plaintiff informed Dr. Fuller that he performed a moderate level of exercise; however, his back pain limited his daily activities. (*Id.*) On examination, Dr. Fuller observed that Plaintiff had full movement in all of his extremities. (T. 297.) He noted Plaintiff had decreased flexion and extension in his thoracic spine. (*Id.*) Dr. Fuller

---

[2] Occasionally is defined as "very little to one-third of the time." (T. 306.)

7

observed that Plaintiff had normal motor strength in his upper and lower extremities. (*Id.*) Dr. Fuller prescribed a pain medication and informed Plaintiff to follow up "as needed." (T. 298.) In a medical source statement dated March 20, 2014, Dr. Fuller opined, in part, that Plaintiff could "frequently" reach overhead, reach in all other directions, handle, finger, feel, and push/pull. (T. 291.) Dr. Fuller noted Plaintiff could "sort, handle, or use paper/files." (T. 294.)

The ALJ stated that she considered all three examinations as "one time examinations" and assigned them all "great weight." (T. 22.) The ALJ reasoned that "as a whole" neither Dr. Fuller's nor Dr. Prezio's opinions appeared "completely correct." (*Id.*) However, the ALJ afforded Dr. Prezio's opinion "greatest weight," except regarding respiratory limitations, reasoning the limitations were inconsistent with examinations in the record. (*Id.*) The ALJ further stated that there was "no reason" to limit Plaintiff to occasional handling, fingering, and feeling. (*Id.*)

Plaintiff essentially argues that the ALJ determined that Plaintiff was capable of frequently using his upper extremities for fingering, feeling and handling without providing "any rationale" for rejecting Dr. Prezio's opinion that Plaintiff was limited to performing these functions occasionally. (Dkt. No. 11 at 4 [Pl.'s Mem. of Law].) To be sure, the ALJ's rationale for rejecting Dr. Prezio's opinion regarding Plaintiff's manipulation limitations was terse. However, the ALJ's reasoning for not adopting Dr. Prezio's manipulative limitations was clear and the ALJ's RFC determination that Plaintiff could frequently use his upper extremities for fingering, feeling, and handling was supported by substantial evidence in the record.

As an initial matter, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

Although the ALJ relied primarily on the medical source opinion of Dr. Prezio in formulating Plaintiff's RFC, the ALJ rejected his specific opinion that Plaintiff was limited to only occasionally handling, feeling, and fingering reasoning that there was "no reason" for these limitations. (T. 22.) Here, although the ALJ might have been more specific in detailing her reasons for concluding that Plaintiff could frequently handle, feel, and finger, other portions of the ALJ's detailed decision, along with Plaintiff's own testimony, demonstrate that substantial evidence supported this portion of the ALJ's determination. *See Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (per curiam) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").

The record, as a whole, supported the ALJ's determination that Plaintiff could frequently handle, finger, and feel. Namely, Dr. Fuller found that Plaintiff could frequently handle, finger, and feel. (T. 291.) Both Drs. Fuller and Prezio opined Plaintiff

9

could sort, handle, or use paper/files. (T. 294, 311.) Dr. Prezio observed that Plaintiff's hand and finger dexterity was intact and his grip strength was 5/5 bilaterally. (T. 302.) Plaintiff's surgeon, Allen Carl, M.D., opined in 2006 that Plaintiff was not symptomatic and could play sports as long as it was non-contact. (T. 239.) Dr. Carl also stated in 2005 that Plaintiff was working as a bus-boy and that he had no limitations to work, except that if he did "heavy labor" he would "wear out a lot quicker." (T. 240.) Therefore, opinion evidence in the record as well as objective medical findings supported the ALJ's RFC determination that Plaintiff could frequently handle, feel, and finger.

In addition, Plaintiff's own testimony supported the ALJ's RFC determination. Plaintiff testified that he was limited due to his back pain; however, Plaintiff never indicated his back pain affected his ability to manipulate. Specifically, Plaintiff testified at the hearing that standing aggravated his back pain. (T. 41.) He testified that he could lift and carry "around 10 to 12 pounds," that he could sit for an hour at a time, stand for an hour at a time, and walk for about fifty minutes. (T. 45-46.) Plaintiff testified that he was able to do the dishes and sweep the floor without difficulty. (T. 47.) Plaintiff testified that he left his job as a stocker/cashier to work in landscaping because it paid more and he got the weekends off. (T. 39.) Plaintiff also testified that the standing requirements as a cashier bothered his back. (T. 41.) Plaintiff did not advise any provider that he had problems with manipulation. He told Dr. Prezio that his back pain prevented him from stooping over, bending, and standing for long periods of time. (T. 301.) Plaintiff informed Dr. Fuller that his back pain limited his activities such as taking out the trash, doing dishes, and sweeping. (T. 297.)

Therefore, it is apparent from the ALJ's decision that she properly relied on the record as a whole in making her determination that Plaintiff could frequently handle, finger, and feel. The ALJ's determination was supported by substantial evidence in the record, including Dr. Fuller's opinion, objective medical findings, and Plaintiff's testimony.

### B.     The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ is required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f) (2012), *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (quoting *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir.2010)). A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala*, 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d at 605-606. Further, "the mere existence of a non-exertional impairment does

not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

At step five, the ALJ relied on the Grids in making her determination. (T. 23.) The ALJ stated that if Plaintiff had the capacity to perform a full range of sedentary work, a finding of "not disabled" would be directed by the Grids at 201.28; however, the additional limitations have "little to no effect on the occupational base of unskilled sedentary work." (*Id.*) The ALJ provided no additional analysis nor did the ALJ cite to the Regulations or Rulings to support her assertion that Plaintiff's non-exertional limitations would not significantly erode the occupational base.

Plaintiff argues that the ALJ erred in her step five determination because a limitation to occasional use of Plaintiff's upper extremities for handling, fingering, and feeling, would significantly erode the unskilled sedentary base and require the testimony of a VE. (Dkt. No. 11 at 4 [Pl.'s Mem. of Law].) Plaintiff provides no citations to Regulations or case law to support his argument.

The ALJ determined that Plaintiff could frequently handle, finger and feel and for the reasons stated herein the ALJ's determination was supported by substantial evidence in the record. Because a limitation to frequent use of the upper extremities for handling, fingering and feeling would not erode the occupational base for unskilled work the ALJ did not err in relying on the Grids in making her step five determination. *See* SSR 96-9p ("Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.") (emphasis in the original). Therefore, the ALJ did not err at step five in relying on the Grids.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 20) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: April 27, 2017

*/s/ Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge